COMMONWEALTH *vs.* JOSEPH M. PIERCE.

No. 04-P-457.

Norfolk. October 6, 2005. - May 12, 2006.

Present: GREENBERG, BECK, & MILLS, JJ.

*Evidence,* Wiretap, Cross-examination, Prior conviction. *Practice, Criminal,* Motion to suppress, Striking of testimony, Prior conviction, Required finding.

A District Court judge properly denied a criminal defendant's motion to suppress incriminating statements that he made at the local police station and that certain officers heard through the station's intercom system, where the Massachusetts wiretap statute, G. L. c. 272, § 99 D 1 b, exempts the use of an office intercommunication system in the ordinary course of business from the general prohibition of the interception of oral communications. [285-288]

No substantial risk of a miscarriage of justice arose at a criminal trial from the judge's failure to strike the direct testimony of the complaining witness in light of that witness's false testimony on cross-examination, where cross-examination was not totally foreclosed in that the jury later heard the complaining witness recant the false testimony [288-289]; further, the judge did not err in relying on the false testimony in denying the defendant's motion for required findings of not guilty at the close of the Commonwealth's case, because the judge, in ruling on the motion, was not permitted to consider the credibility of the witness [290].

A District Court judge did not abuse her discretion in excluding from evidence at a criminal trial three of the complaining witness's prior convictions, where the judge allowed the defendant to impeach that witness with seven other prior convictions and might well have determined that the additional convictions would add nothing to the case. [289-290]

COMPLAINTS received and sworn to in the Quincy Division of the District Court Department on December 26, 2002.

A pretrial motion to suppress evidence was heard by *Paul V. Buckley,* J., and the cases were tried before *Mary A. Orfanello,* J.

*Rose E. King* for the defendant.

*Varsha Kukafka,* Assistant District Attorney (*Matthew J. Mc-*

*Donough,* Assistant District Attorney, with her) for the Commonwealth.

BECK, J. In the early morning hours of December 25, 2002, the defendant, Joseph Pierce, and his brother and cousin were involved in a dispute involving Noren Felix, who was then living with the defendant's former girlfriend. In response to a 911 call Felix placed after he had received a threatening phone call, the police were dispatched to an address on Thompson Drive in Randolph and were given the description of a green minivan they could expect to see occupied by the people "involved in the call." They saw the minivan leaving Thompson Drive, and pulled it over. Three male passengers were riding in the minivan; the female driver agreed to let the police search the van. In the course of the search, the police found an unlicensed firearm, a .22 caliber Beretta pistol. They took custody of the gun, arrested the men in the van, and took them back to the Randolph police station. The next morning a criminal complaint issued from the Quincy Division of the District Court Department of the Trial Court charging the defendant with carrying a firearm without a license, G. L. c. 269, § 10(*a*), and threatening to commit a crime, G. L. c. 275, § 2.

Sometime later, the defendant filed a motion to suppress evidence derived from oral statements the defendant had made at the police station. The judge denied the motion after a hearing, citing the Massachusetts wiretap statute, G. L. c. 272, § 99, and G. L. c. 40, § 36. After a jury trial in the Quincy District Court, the defendant was convicted of both charges. The defendant appeals, claiming error in the denial of the motion to suppress, as well as various other alleged errors in the conduct of the trial. The primary issue before us concerns the treatment of the defendant's statements following his arrest.

*The police station.* Upon their arrests, the defendant and the two other male passengers were locked in three different cells. The cells were monitored with an audio-visual intercom system. The arrangement of the monitors allowed the police officer sitting at the front desk to watch and listen to what was taking place inside the cells.

While the defendant was in his cell, the desk officer on duty, Jason Fisher, heard him through the intercom system conversing

with the other minivan passengers. Officer Fisher testified to the substance of the overheard conversations, in which Fisher heard the defendant admit to ownership of the gun. The defendant argues that the motion to suppress this testimony should have been allowed because the police obtained the defendant's incriminating statements using an unlawful interception in violation of the Massachusetts wiretap statute. See G. L. c. 272, § 99 P 1, as amended through St. 1968, c. 738, § 1, which provides in pertinent part:

> "Suppression of evidence. Any person who is a defendant in a criminal trial in a court of the commonwealth may move to suppress the contents of any intercepted . . . oral communication or evidence derived therefrom, for the following reasons:
>
> "1. That the communication was unlawfully intercepted.
>
> "2. That the communication was not intercepted in accordance with the terms of this section.
>
> " . . .
>
> "5. That the evidence sought to be introduced was illegally obtained."

*The wiretap statute.* The wiretap statute makes unlawful the unauthorized interception of any oral communication and the use of the contents of an interception. G. L. c. 272, § 99 C 1, 3. *Commonwealth* v. *Rivera*, 445 Mass. 119, 123 & nn.3, 4 (2005). The statute defines "interception" as "to secretly hear . . . the contents of . . . [an] oral communication through the use of an[ ] intercepting device." G. L. c. 272, § 99 B 4.

We assume, without deciding, that there was in fact an interception as defined by the wiretap statute when Officer Fisher heard the defendant's comments through the police station's intercom system. Compare *Commonwealth* v. *Rivera, supra* at 123 n.5 (declining to reach question of defendant's knowledge of recording), with *id.* at 134 (Cowin, J., concurring) (concluding that store surveillance camera, which included audio recording, was not "secret," and thus was not "interception" under statute).

Nevertheless, the use of the overheard statements was not unlawful, because the intercom system falls within one of the wiretap statute's enumerated exemptions. See G. L. c. 272, § 99 D 1 b; *Commonwealth* v. *Look*, 379 Mass. 893, 909, cert. denied, 449 U.S. 827 (1980).

The wiretap statute exempts certain activities from the general prohibition of the interception of oral communications. G. L. c. 272, § 99 D. Section D 1 provides, in pertinent part:

"It shall not be a violation of this section —

" . . .

"b. for persons to possess an office intercommunication system which is used in the ordinary course of their business or to use such office intercommunication system in the ordinary course of business."

The Randolph police station's intercom system falls within this exception. See *Commonwealth* v. *Look*, *supra*.

In *Commonwealth* v. *Look*, the defendant made incriminating statements to a police officer while in an interrogation room at a police station. Unbeknownst to the defendant and the interrogating officer, four officers at the front desk of the station overheard the defendant's statements through an intercom system. They conveyed that information to two State police officers, who subsequently questioned the defendant and testified at trial. *Id.* at 895-896. The defendant argued that the evidence derived from the overheard statements should have been suppressed because the statements were unlawfully intercepted through the intercom system of the police station. *Id.* at 897.

Concluding that the intercom system was "obviously . . . installed for ordinary business purposes [and] was being used for one of those purposes [assuring the safety of the interrogating officer] on the night in question," the Supreme Judicial Court held that the intercom interception was not illegal under the Massachusetts wiretap statute because the intercom system fell within the statute's exemption for intercom systems installed and used in the ordinary course of business. *Id.* at 909.

Several years after the *Look* decision, the Legislature enacted

G. L. c. 40, § 36B. As currently in effect, see St. 1985, c. 208, § 1, that statute mandates that "[a]t least one . . . cell within [a] lockup facility shall have installed within it, but beyond the access of any person detained within such cell, an electronic audio system whereby a police officer . . . is brought within audible range of such cell" unless at least one cell in the given lockup facility is "within audible range of the duty desk without electronic assistance." Regardless of the specific design of the Randolph police station, it is clear that the Legislature has envisioned, and in certain circumstances required, the use of these intercom systems in police stations. We presume that in enacting G. L. c. 40, § 36B, the Legislature was aware of the wiretap statute and the *Look* decision, see *Commonwealth* v. *Callahan*, 440 Mass. 436, 440-441 (2003), and cases cited, and decided that intercom systems in police stations were necessary for safety purposes. See also *White* v. *Seekonk*, 23 Mass. App. Ct. 139, 141 & n.2 (1986) (recommendations of Special Commission to Investigate Suicide in Municipal Detention Centers incorporated in G. L. c. 40, § 36B). The Legislature has effectively mandated that police stations without a cell within audible range of the front desk use an intercom system in their ordinary course of business. See G. L. c. 272, § 99 D 1 b.

This court has previously interpreted the phrase "ordinary course of business," albeit when contained within a different exemption. See *Dillon* v. *Massachusetts Bay Transp. Authy.*, 49 Mass. App. Ct. 309, 319 (2000), construing G. L. c. 272, § 99 B 3, and quoting from *O'Sullivan* v. *NYNEX Corp.*, 426 Mass. 261, 266 (1997) (" '[o]rdinary course of . . . business' translates as 'legitimate business purpose' "). In *Dillon* v. *Massachusetts Bay Transp. Authy.*, *supra* at 309-310, 319, the Massachusetts Bay Transportation Authority (MBTA) recorded conversations on nearly all of its telephone lines connected to major operational centers. Employees of the MBTA claimed that such recordings violated the wiretap statute, while the MBTA asserted that such recordings were necessary for efficiency and safety reasons associated with maintaining a mass transit system. This court held that such considerations were legitimate business purposes, or put another way, within the ordinary course of business of the MBTA. *Id.* at 319.

The record in this case supports a finding that the intercom

system in the Randolph police station is an office intercommunication system used in the ordinary course of business. The equipment includes a camera in the upper corner of the jail cell looking down at the cell, as well as a speaker on the wall of the cell. Police officers can watch the cell from a monitor located at the front desk where they sit, can hear what is taking place in the cell through a speaker, and can converse with the prisoners in the cell through the system. Officer Fisher testified at the suppression hearing that the police officers at the station use the audio-visual equipment to monitor prisoners once they are inside a cell. He stated that the intercom system is a safety device that allows the officers to make sure that the prisoners do not harm themselves while in a cell and that they are not planning to harm an officer when they come out of the cell.

As in *Look*, the intercom system in the Randolph police station was used for safety purposes. See *Commonwealth* v. *Look*, 379 Mass. at 909. Just as safety is a legitimate business concern of the MBTA, see *Dillon* v. *Massachusetts Bay Transp. Authy.*, 49 Mass. App. Ct. at 319, so is maintaining the safety of a police station and of persons in police custody a legitimate business practice of a local police department. While the motion judge mistakenly referred to G. L. c. 272, § 99 D 1 c (exemption for United States law enforcement officers), he did not err by relying on G. L. c. 40, § 36B, and on Officer Fisher's testimony stating that the system was designed and used for safety purposes. The motion to suppress was properly denied. *Commonwealth* v. *Gordon*, 422 Mass. 816, 832-833 (1996), which did not rely on any of the wiretap statute's specific exemptions, is not to the contrary.

*Other issues.* The defendant additionally alleges that other errors were made during the course of the trial, all of them pertaining to the treatment of the complaining witness, Felix's, prior criminal history. We find none of the defendant's arguments persuasive.

First, the defendant argues that he suffered a substantial risk of a miscarriage of justice because Felix's direct testimony was not struck. During the Commonwealth's case-in-chief, Felix testified falsely on cross-examination, denying that he had been previously convicted of numerous offenses. After the Com-

monwealth rested, and during the presentation of the defendant's case, the prosecutor alerted the trial judge to the error, explaining that Felix mistakenly believed that his guilty pleas were not the equivalent of convictions. Felix was then recalled to the stand after the defense had rested, and admitted he had been convicted of the offenses he previously denied. After learning that Felix's initial denials were false, defense counsel did not move to strike the substantive testimony Felix had provided during the Commonwealth's case-in-chief. Nor did defense counsel move for a mistrial.

There was no substantial risk of a miscarriage of justice. "Cross-examination that is somewhat impeded, but not totally foreclosed, presents a weaker case for finding a denial of rights than a complete absence of cross-examination." *Commonwealth v. Kirouac*, 405 Mass. 557, 561-562 (1989), and cases cited. Although the defendant's cross-examination of Felix after his initial testimony was hampered by Felix's false statements, the cross-examination was not "totally foreclosed"; the jury later heard Felix recant the testimony and admit to the convictions. Cf. *United States v. Kaplan*, 554 F.2d 577, 580 (3d Cir. 1977) ("A delayed disclosure [of exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963)] by the prosecution is not per se reversible error").

Second, the defendant argues that his constitutional right to cross-examine witnesses was violated when the trial judge excluded from evidence three of Felix's prior convictions. General Laws c. 233 § 21, provides that "[t]he conviction of a witness of a crime *may* be shown to affect his credibility" (emphasis added). This leaves the trial judge with significant discretion when deciding whether to allow evidence of a witness's prior convictions in evidence. *Commonwealth v. Harris*, 443 Mass. 714, 720-721 & n.5 (2005). We review the judge's ruling for an abuse of discretion. *Commonwealth v. Paulding*, 438 Mass. 1, 12 (2002).

The trial judge excluded evidence of Felix's 1991 conviction of indecent assault and battery on a child under sixteen and 1988 conviction of assault and battery by means of a dangerous weapon. Additionally, the judge excluded a third prior conviction because the docket was illegible. However, the judge al-

lowed the defendant to impeach Felix with seven prior convictions, including one of larceny and another of giving a false name to a police officer — both of which pertain to Felix's truthfulness. There was no abuse of discretion. The judge might well have determined that the admission of the additional convictions would be a form of "piling on" that would add nothing to the case. Cf. *Commonwealth* v. *Clarke*, 418 Mass. 207, 211-213 (1994) (no abuse of discretion in exclusion of witness's prior inconsistent written statements where they would have been cumulative of statements read to jury and defendant impeached witness with twenty prior convictions, including convictions of crimes of dishonesty).

Third, the defendant argues that he was prejudiced when the trial judge relied on Felix's false testimony in denying the defendant's motion for required findings of not guilty at the close of the Commonwealth's case. See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). The standard for a required finding of not guilty is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). When making this determination, "the judge does not properly exercise discretion concerning the weight or integrity of the evidence, but instead must assess the legal sufficiency of the evidence by the standard set out in *Commonwealth* v. *Latimore*." *Commonwealth* v. *Doucette*, 408 Mass. 454, 456 (1990) (motion pursuant to Mass.R. Crim.P. 25[b][2], 378 Mass. 896 [1979]). The defendant argues that the motion should have been granted because Felix was not credible and the judge therefore could not have relied on Felix's testimony. The credibility of a witness is a determination left for the jury; a judge may not consider credibility of a witness when ruling on a motion for a required finding of not guilty. See *Commonwealth* v. *Hill*, 387 Mass. 619, 623-624 (1982); *Commonwealth* v. *Ortiz*, 393 Mass. 523, 535-536 (1984). There was no error in the denial of the motion.

*Judgments affirmed.*